NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000143
20-JAN-2017
08:26 AM

NO. CAAP-14-0000143

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JUNE T. AOYAGI, Plaintiff-Appellant, v.
ESTATE OF CINDY HATSUE AOYAGI, GLENN YOSHIO OTA,
JANIS YUKIE OTA, JOHN DOES 1-5, JANE DOES 1-5,
DOE CORPORATIONS 1-5, DOE PARTNERSHIPS 1-5,
DOE NON-PROFIT ORGANIZATIONS 1-5 and DOE
GOVERNMENTAL AGENCIES 1-5, DefendantS-Appellees


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 10-1-2560-11 (JHC))


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Plaintiff-Appellant Roger T. Aoyagi (**Roger**), as personal representative for the Estate of June T. Aoyagi (**June**) (in his capacity as representative of June's Estate, Roger will be referred to as **Appellant**), appeals from the Circuit Court of the First Circuit's (**Circuit Court**) Judgment in favor of Defendant-Appellees Estate of Cindy H. Aoyagi (the decedent will be referred to as **Cindy**), Glenn Y. Ota (**Glenn**), and Janis Y. Ota (**Janis**) (collectively, **Appellees**) filed on December 9, 2013 (**Judgment**), and challenges the Circuit Court's Order Granting in

Part Defendants' Motion for Attorneys' Fees and Costs (**Order**) filed on November 6, 2013.[1]

Appellant raises five points of error, contending that the Circuit Court erred in:

(1) dismissing the claim for specific performance as being time barred by the statute of limitations;

(2) dismissing the claim for specific performance as being time barred by the doctrines of waiver or laches;

(3) declining to cancel the deed from Cindy to Glenn on grounds of undue influence;

(4) declining to declare a constructive or resulting trust in favor of Tara A.R. Aoyagi, aka Tara Aoyagi Lumford (**Tara**) with respect to the subject property; and

(5) The Circuit Court erred in granting the Appellees request for attorneys' fees and costs.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Appellant's points of error as follows:

(1) Appellant contends that the Circuit Court erred in dismissing a claim for specific performance as being time barred by the six-year statute of limitations period in HRS § 657-1 (2016), the one-year statute of limitations period in HRS § 535-1 (2006), and the eighteen-month statute of limitations period in HRS § 560:3-803 (2006). The Circuit Court determined only that

---

[1]     The Honorable Jeannette H. Castagnetti presided, except to the extent noted below.

the breach of contract claim in Count I of the four-count complaint was time-barred.[2]   We consider Appellant's arguments in this context.

Appellant argues that HRS § 657-1(1) does not apply to a contract claim for specific performance.  HRS § 657-1 states in pertinent part:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
>
> (1)   Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court[.]
>
> . . . .
>
> (4)   Personal actions of any nature whatsoever not specifically covered by the laws of the State.

The Hawai'i Supreme Court has recognized that the appropriate statute of limitations period is determined by the "nature of the claim or right, not the form or pleading." Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981) (citations omitted).  Furthermore, "[t]he nature of the right or claim is determined from the allegations contained in the pleadings." Id. (citation omitted).  In Count I of the complaint, Appellant contends that "[Appellees] have breached and caused the breach of the [1989] Agreement between [June] and [Cindy] by failing to provide [Appellant] with a deed to the Property, as required by the [1989] Agreement."   Thus, the nature of the claim in Count I is based on a breach of contract, subject to the six-year statute of limitations set for in HRS § 657-1.

---

[2]   The Circuit Court concluded that Appellant's claim for tortious breach of contract in Count II failed to state a claim as a matter of law. With regard to the claims for undue influence in Count III, and violation of HRS § 535-1 in Count IV, at the conclusion of the jury-waived trial, the Circuit Court determined that Appellant failed to meet her burden of proof.

Generally, the time limit to institute an action based upon a claim for breach of contract begins when the contract is breached. Id. at 219, 626 P.2d at 180. Here, pursuant to the 1989 Agreement, Cindy promised to provide a half interest in a property located in Waipahu (**Property**) to June in return for the $25,000.00 loan. However, Cindy did not provide June with a half interest in the Property. Instead, on October 3, 1989, Halekua Development Corporation executed a deed conveying the Property only to Cindy in fee simple. The deed was filed with the Bureau of Conveyances on October 20, 1989, and no interest was thereafter conveyed to June. Fee simple is defined as "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs[.]" Black's Law Dictionary 691 (9th ed. 2009). "'Fee simple absolute' and 'fee simple' represent the entire and absolute interest and property in the land. No one can have a greater interest." 28 Am. Jur. 2d Estates § 13 (2016) (footnote omitted). This court has recognized that the "central purpose of recording a conveyance of real property is to give notice to the general public of the conveyance[.]" Markham v. Markham, 80 Hawai'i 274, 281, 909 P.2d 602, 609 (App. 1996). Accordingly, the Circuit Court did not err in its determination that Cindy breached the 1989 Agreement in 1989. The complaint was filed in 2010, and served in 2011, well outside of Hawaii's six-year statute of limitations for breach of contract claims.

Appellant argues, however, that "the six-year statute of limitations would ordinarily bar [Appellant's] claim for the

4

$25,000 amount of the loan, unless the offer by [Glenn] to pay [Cindy's father, Tom T. Aoyagi (**Tom**),] revived the claim and started the statutory period anew" and that, in this case, Glenn's offer "created a new obligation, with a new six-year statute of limitations." Appellees argue, *inter alia*, that no new obligation was created because Tom declined Glenn's offer on two occasions.

In order to create a binding contract, "there must be an acceptance of the offer; until the offer is accepted, both parties have not assented, or, in the language often used by the courts, their minds have not met." 17A Am. Jur. 2d <u>Contracts</u> § 66 (2004) (footnote omitted). A binding contract is created when there is "mutual assent or a meeting of the minds on all essential elements or terms." <u>Earl M. Jorgensen Co. v. Mark Const., Inc.</u>, 56 Haw. 466, 470, 540 P.2d 978, 982 (1975). Furthermore, an "offer is terminated by rejection and cannot be accepted so as to create a contract after it has been rejected." 17A Am. Jur. 2d <u>Contracts</u> § 64. Tom refused Glenn's offer to pay the $25,000.00 loan. Thus, there was no contract created. Therefore, we conclude that Appellant's argument is without merit.

As we have concluded that Appellant's breach of contract claim was time-barred pursuant to HRS § 657-1, we need not address Appellant's argument that the Circuit Court erred in its alternative ruling based on HRS § 560:3-803. Similarly, we need not reach the Circuit Court's decision concerning the timeliness of Appellant's claim under HRS § 535-1.

5

(2)     The Circuit Court also concluded that Appellant's breach of contract claim in Count I was barred by the doctrine of laches and waiver.  As the breach of contract claim is barred by the statute of limitations, we need not reach laches and waiver. Despite Appellant's arguments to the contrary, the Circuit Court did not conclude that Appellant waived her undue influence claim in Count III.

(3)     The Circuit Court concluded, after the trial on the merits, that Appellant had "presented no evidence of undue influence when Cindy executed her estate planning documents on July 21, 2008."

This jurisdiction has "recognized and impliedly adopted the 'SODR' factors in determining whether the exertion of undue influence resulted in the execution of a challenged will."  In re Estate of Herbert, 90 Hawai'i 443, 458, 979 P.2d 39, 54 (1999). The SODR factors are "susceptibility of the testator or testatrix, opportunity for the exertion of undue influence, disposition to exert undue influence, and the result, in the will, of such undue influence."  Id. at 457, 979 P.2d at 453. (citation and brackets omitted).  The supreme court recognized that in order to "sustain a claim of undue influence, it must appear that the influence exercised amounted to fraud or coercion destroying free agency, or the substitution of another's will for that of the testator or testatrix so that the product is not that of the testator or testatrix."  Id. at 458, 979 P.2d at 54 (citation and brackets omitted).

In this case, there is evidence in the record indicating that Cindy possessed the mental capacity to execute her estate plan. In response to questions posed by Appellees' counsel, Yumiko Watson (**Yumiko**), one of the witnesses to Cindy's will, testified that Cindy was of sound mind, and was not under constraint or undue influence when she signed the will. Janis also testified that Cindy was alert when she signed her will. Janis stated that she believed that Cindy voluntarily signed her will. Gail Aoki (**Gail**), Cindy's cousin, testified that throughout Cindy's stay in the hospital and hospice, her mind remained sharp and clear. Michelle Hobus, Esq. (**Michelle**), the estate planning lawyer who spoke and met with Cindy and drafted Cindy's will, also testified that she had "no concerns about [Cindy's] mental state and her ability to understand and to sign the documents [in her estate plan]." Additionally, Dr. Rae S. Seitzs (**Dr. Seitz**), Cindy's primary care physician, testified that "Cindy was always alert. She always knew what was going on. She understood her treatment options and aspects of her care." Dr. Seitz believed that Cindy was capable of making financial decisions and estate-planning decisions.

In addition, there is no evidence indicating that Cindy was coerced into executing her estate plan. The record contains testimony from numerous witnesses regarding Cindy's intentions for her Property. Prior to drafting her estate plan, Cindy told Michelle that she did not want her parents or Roger to receive the Property. Michelle testified that "[Cindy] was comfortable with the idea that Glenn would manage the property for Tara's

benefit until the appropriate time, and [Cindy] felt very comfortable that [Glenn] understood her wishes and that he would effectuate those wishes." Gail testified that Cindy did not regret selecting Glenn to manage her Property, and that Cindy trusted him. Gail also testified that Cindy was adamant that she did not want Roger to get the Property. Dr. Seitz was aware that Cindy did not want her parents or Roger to receive her Property. It is apparent from the testimony that Cindy's estate plan reflected her intentions for her Property.

Moreover, the record indicates that Cindy was aware that she could amend her estate plan. Gail informed Cindy that she could change her estate plan at any time. Additionally, Gail also testified that Glenn and Janis did not prevent Cindy from changing her estate plan. In fact, Glenn and Janis informed Cindy that she could change her estate plan at anytime. Glenn agreed to sign a release of his remainder interest, in case Cindy changed her mind about her estate plan. Glenn and Janis testified that they did not tell Cindy that it would cost $5,000.00 to change her will. Gail related that despite the fact that Cindy was under pressure from Tom to change her estate plan, Cindy did not change her mind about her estate plan. Dr. Seitz also heard Cindy tell Tom that she did not want to change her estate plan.

For these reasons, the Circuit Court did not err when it concluded that there was no evidence of undue influence.

(4) Appellant's complaint does not set forth a claim for a constructive trust. Appellant nevertheless argues that a

constructive trust is an appropriate form of relief because the issue of a constructive trust was "tried by express or implied consent of the parties" under Rule 15(b)(1) of the Hawai'i Rules of Civil Procedure (**HRCP**).

Rule 15(b)(1) of the HRCP states:

**(b) Amendments During and After Trial.**

(1) FOR ISSUES TRIED BY CONSENT. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

The supreme court has recognized that Rule 15(b) is not permissive, and that "[a]s long as issues are tried by the express or implied consent of the parties to a lawsuit, the issues '*shall* be treated as if raised in pleadings.'" <u>Cresencia</u> <u>v. Kim</u>, 10 Haw. App. 461, 478, 878 P.2d 725, 734 (1994) (citation omitted). Furthermore,

Express consent may be found in a stipulation, or may be incorporated a pretrial order.

Consent is generally implied when the party opposing a Rule 15(b) motion fails to object to the introduction of evidence relevant to an unpleaded issue, or actually produces evidence bearing on the new issue. However, a party's failure to object will not constitute implied consent unless the party had notice that evidence was being introduced to prove the unpleaded issue. Furthermore, consent will not be implied if a party will be substantially prejudiced by such an amendment.

<u>Id.</u> at 478, 878 P.2d at 734-35 (citations omitted).

In the instant case, Appellants did not file a Motion to Amend the Complaint under HRCP Rule 15. There was no stipulation, pretrial order or other indication that Appellees expressly consented to the constructive trust issue. The record indicates that Appellees did not impliedly consent to the issue

of constructive trust. In closing argument, Appellant's counsel arguably alluded to a constructive trust for the first time, stating: "Tara should get the property. As the court of equity you have -- you have ways in which you can manifest that." Prior to closing argument, Appellees had no notice that Appellant was seeking the imposition of a constructive trust. If the Appellees had known that Appellant was seeking the imposition of a constructive trust, then they "presumably would have proceeded differently with the presentation of evidence, questioning of witnesses, and argument." Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 113, 176 P.3d 91, 112 (2008).

Appellant argues that the issue of constructive trust was tried by implied consent because evidence of Cindy's intentions to give her Property to Tara was introduced at trial, contending that "[a]ll the facts that support a claim for constructive trust, support a claim for undue influence." However, this court has recognized that:

> When the evidence that is claimed to show that an issue was tried by consent is relevant to an issue already in the case, as well as to the one that is the subject matter of the amendment, and there was no indication at trial that the party who introduced the evidence was seeking to raise a new issue, the pleadings will not be deemed amended under the first portion of Rule 15(b). The reasoning behind this view is that if evidence is introduced to support basic issues that already have been pleaded, the opposing party may not be conscious of its relevance to issues not raised by the pleadings unless that fact is made clear.

Cresencia, 10 Haw. App. at 479-80, 878 P.3d at 735 (citations and brackets omitted).

Here, the evidence of Cindy's intentions to give her Property to Tara is relevant to the undue influence claim. Appellant introduced evidence that Cindy wanted her Property to

go to Tara to prove that Cindy was unduly influenced into executing her will. There was no indication at trial that Appellant introduced this evidence because he was seeking the imposition of a constructive trust for Tara. Moreover, Appellees' counsel objected when Appellant attempted to introduce evidence that was not relevant to the claims in the complaint. At trial, Appellant's counsel asked Michelle whether the revocable trust was for Tara. Appellees' counsel objected, and stated that "Tara has no counter-complaint related to anything . . . we have a breach of 1989 contract. We have tortious breach of 1989 contract. We have undue influence that Glenn and Janis exerted on Cindy to preclude her from effectuating her estate plan, and nothing else." Appellant's counsel also asked Michelle, "Do you think [Glenn] would be honoring the wishes of Cindy if he continued to maintain possession of the property that Cindy had willed to him indefinitely?" Appellees' counsel objected and stated that "the complaint has nothing to do with Tara or these wishes. It's entirely irrelevant." Upon review of the record, it is clear that Appellees did not consent to try the issue of a constructive trust.

Even if the parties had consented to amending the pleading, there is no clear and convincing evidence that a constructive trust should be imposed. Maria v. Freitas, 73 Haw. 266, 274, 832 P.2d 259, 264 (1992). It is well-established that "[a] constructive trust will be imposed where the evidence is clear and convincing that one party will be unjustly enriched if allowed to retain the entire property." Id. (citation omitted).

The "clear and convincing" evidence standard has been recognized as:

> [A]n intermediate standard of proof greater than a preponderance of the evidence, but less than proof beyond a reasonable doubt required in criminal cases. It is that degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established, and requires the existence of a fact be highly probable.

Iddings v. Mee-Lee, 82 Hawai'i 1, 13, 919 P.2d 263, 275 (1996) (citations omitted).

As discussed, Cindy's estate plan reflected her intentions for her Property. Although Cindy expressed a desire to eventually give her Property to Tara, she was concerned that Tara was not responsible. As such, Cindy decided to convey the Property to Glenn. Prior to signing the will and deed, Michelle explained to Cindy that upon her death, Glenn would become the sole owner of the Property, and her estate would have no interest in the Property. With this knowledge, Cindy signed the will and deed. Cindy possessed the mental capacity to execute her estate plan and there is no evidence that Cindy was coerced into executing her estate plan. Moreover, despite pressure from Tom, Cindy did not change her estate plan. Thus, there is no clear and convincing evidence indicating that Glenn will be unjustly enriched at Tara's expense. We also conclude that Appellant's remaining arguments relating to the termination and revocation of a constructive trust are without merit.

(5) Appellant argues that attorneys' fees should not have been awarded under HRS § 607-14 (2016) because the claims were not in the "nature of assumpsit." HRS § 607-14 provides, in relevant part, that:

¶ 607-14 Attorneys' fees in actions in the nature of assumpsit, etc.

> In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

"Assumpsit is a common law form of action which allows for the recovery of damages for the non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations." Schulz v. Honsador, Inc., 67 Haw. 433, 435, 690 P.2d 279, 281 (1984) (citation omitted), overruled on other grounds by Blair v. Ing, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001). The supreme court has stated that:

> [I]n ascertaining the nature of the proceeding on appeal, [the supreme] court has looked to the essential character of the underlying action in the [circuit] court.
>
> . . . .
>
> The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. Where there is doubt as to whether an action is in assumpsit or in tort, there is a presumption that the suit is in assumpsit. Further, a plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit.

Leslie v. Estate of Tavares, 93 Hawai'i 1, 5-6, 994 P.2d 1047, 1051-52 (2000) (citations omitted).

Appellant relies on Lee v. Aiu, 85 Hawai'i 19, 936 P.2d 655 (1997), and Smothers v. Renander, 2 Haw. App. 400, 633 P.2d 556 (1981), in support of his proposition that "claims for specific performance, are not in the nature of assumpsit, as they seek injunctive or declaratory relief rather than damages." The

supreme court has acknowledged that a "suit to enforce an agreement is a suit for specific performance and is not an action in the nature of assumpsit." Lee, 85 Hawai'i at 31, 936 P.2d at 667. In Lee, the supreme court concluded that a claim for specific enforcement of an agreement was not an action in the nature of assumpsit, even thought the claimant also prayed for damages. Id. at 31-32, 936 P.2d at 667-68. In Smothers, the Intermediate Court of Appeals determined that a claim for specific performance is not in the nature of assumpsit, and HRS § 607-14 does not apply. Smothers, 2 Haw. App. at 404-405, 633 P.2d at 561. However, the court also noted that a portion of a counterclaim was in the "'nature of assumpsit' and HRS § 607-14 (1976) is applicable to that portion." Id. at 405, 633 P.2d at 561.

Since Lee and Smothers, the supreme court has recognized that "in awarding attorneys' fees in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, if practicable, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims." Blair, 96 Hawai'i at 332, 31 P.3d at 189 (citing TSA Int'l Ltd. v. Shimizu Corp., 92 Hawai'i 243, 264, 990 P.2d 713, 734 (1999)).

In the instant case, the following claims for relief were alleged in the complaint: (1) breach of contract, (2) tortious breach of contract, (3) undue influence, and (4) violation of HRS § 535-1.[3] The breach of contract claim alleges

---

[3]     HRS § 535-1 provides:

When any person, who is bound by a contract in writing

14

that Cindy had breached the 1989 Agreement. The tortious breach of contract claim is based on the allegation that Glenn and Janis caused the breach of the 1989 Agreement. The undue influence claim alleges that Cindy's lack of capacity and Appellees undue influence caused Cindy to convey the Property to Glenn in violation of the 1989 Agreement. As the nature and character of Appellant's entire grievance relates to the assertion that Cindy breached her contractual obligations to June, which is in the nature of assumpsit, we conclude that these claims are in the nature of assumpsit.

Similarly, although Appellant's claim for specific performance under HRS § 535-1 is not in the nature of assumpsit, it is also related to the breach of the 1989 Agreement and Appellant seeks damages and attorneys' fees, as well as specific performance.

As the claims in this case involve both assumpsit and non-assumpsit claims, this court "must examine whether claims where attorneys' fees are allowed can be segregated from claims where they are not allowed, which can be done by looking at whether the claims 'involve a common core of facts or are based on related legal theories.'" Fyffe v. Hue, No. 28316, 2010 WL 3409655 at *3 (Haw. App. Aug. 31, 2010) (SDO) (citing Porter v. Hu, 116 Hawai'i 42, 67-68, 169 P.3d 994, 1019-20 (App. 2007)). As in Fyffe, Appellant's "demands for damages and specific

_____

to convey any real estate, dies before making the conveyance, the other party may commence an action in a circuit court to enforce a specific performance of the contract, the action to be commenced within one year after the grant of administration.

15

performance were based on a common set of facts and argued simultaneously before the circuit court." Id. Thus, we conclude that "it is impracticable, if not impossible, to apportion the fees between the assumpsit and non-assumpsit claims." Blair, 96 Hawai'i at 333, 31 P.3d at 190. Based on the foregoing, we conclude the Circuit Court did not abuse its discretion in awarding attorneys' fees.

Appellant also argues that "even if the court believes that it can apportion the claim for attorneys fees between the assumpsit and non-assumpsit claims, the amount thereof should be limited to twenty-five percent to the amount of rental income." In Piedvache v. Knabusch, the supreme court acknowledged that HRS § 607-14 "does not expressly instruct the courts as to how to calculate an award of attorney's fees when no precise monetary amount is sought in the pleadings." 88 Hawai'i 115, 118, 962 P.2d 374, 377 (1998). The court determined that "where it is impossible to determine what the judgment would or might have been had the plaintiff prevailed (e.g., in declaratory judgment actions), the defendant may be awarded all of his or her reasonable attorney's fees." Id. at 119, 962 P.2d at 378. If the amount of potential judgment is ascertainable, the twenty-five per cent cap will apply because the legislature contemplated that "*some* limit on the amount of attorney's fees that a prevailing party could reasonably recover." Id. This court has recognized that it is within the trial court's discretion to determine "how to calculate attorney's fees when no precise monetary amount is sought in the pleadings." Waikoloa Dev. Co.

v. Waikaa Heights Land Inv'rs, No. 30043, 2013 WL 2156057 at *6 (Haw. App. May 20, 2013) (Memo Op) at *6 (citing Piedvache, 88 Hawai'i at 118, 962 P.2d at 377).

In the complaint, Appellant requested punitive damages and "damages as shall be proven at trial, including payment of receipts for rentals for the Property." Accordingly, the Circuit Court determined that the "amount sued for" "totals the value of the Property, the rental proceeds collected from the date of Cindy's death through May 15, 2013 . . . and prejudgment interest on both the Property value and the rental proceeds through May 15, 2013." The Circuit Court noted that "[d]epending on whether the court values the Property based on a 2009 appraisal, 2009 tax assessed value, or 2010 tax assessed value, the total 'amount sued for' ranges from $728,107.23 to $768,415.40." The Circuit Court then concluded that "25% of each of these amounts is $182,026.81 to $192,878.91," and that "[Appellees'] fee request of $111,319.85 is less than the 25% statutory cap required by HRS § 607-14." Upon review, we conclude that the Circuit Court did not abuse its discretion in awarding attorneys' fees.

Finally, without citing to any authority, Appellant challenges the Circuit Court's grant of costs in the amount of $3,240.42. We note that Appellees moved for attorneys' fees and costs under HRCP Rule 54(d) and HRS § 607-9 (2016).[4] HRCP Rule

_____

[4]    HRS § 607-9 provides:

> [(a)] No other costs of court shall be charged in any court in addition to those prescribed in this chapter in any suit, action, or other proceeding, except as otherwise provided by law.

17

54(d) provides "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs." See also Wong v. Takeuchi, 88 Hawai'i 46, 52, 961 P.2d 611, 617 (1998) (recognizing strong presumption that prevailing party will recover costs).

In Wong, the supreme court held that "when costs are awardable to a prevailing party under HRCP Rule 54(d) and a particular taxable cost is allowed by statute or precedent, then actual disbursements for this purpose are presumptively reasonable." Id. at 53-54, 961 P.2d at 618-19. The adverse party has the burden of proving that a cost request is unreasonable. Id. at 54, 961 P.2d at 619. The "award of a taxable cost is within the discretion of the trial court and will not be disturbed absent a clear abuse of discretion." Id. at 52, 961 P.2d at 617 (citation omitted).

Appellees are the prevailing party and requested a total of $908.38 for copying, $52.86 for postage, $457.60 for parking, and $1,821.58 for deposition transcripts. Appellees' request for copying, postage and deposition transcripts are expressly allowable under HRS § 607-9. See supra at note 4. With regard to Appellees' request for their parking expense, the supreme

[(b)] All actual disbursements, including but not limited to, intrastate travel expenses for witnesses and counsel, expenses for deposition transcript originals and copies, and other incidental expenses, including copying costs, intrastate long distance telephone charges, and postage, sworn to by an attorney or a party, and deemed reasonable by the court, may be allowed in taxation of costs. In determining whether and what costs should be taxed, the court may consider the equities of the situation.

court recognized that "[e]xpenditures for parking, rental car, and gas, while not specifically enumerated in the language of HRS § 607-9, are within the scope of 'intrastate travel expenses.' They are necessary expenditures when traveling intrastate." Wong, 88 Hawai'i at 54, 961 P.2d at 619. Therefore, Appellees' requests for copying, postage, parking, and deposition transcripts are presumptively reasonable. Appellant does not argue that Appellees' cost request was unreasonable. The supreme court noted that "[i]n the absence of a challenge to a particular request, it is not an abuse of discretion for a court to award the cost requested as presumptively reasonable." Id. (footnote omitted). We conclude that the Circuit Court did not abuse its discretion in awarding Appellees' costs.

For the foregoing reasons, the Circuit Court's December 9, 2013 Judgment is affirmed.

DATED: Honolulu, Hawai'i, January 20, 2017.

On the briefs:

Michael P. Healy,
for Plaintiff-Appellant.

Douglas C. Smith,
Mark M. Murakami,
E. Kumau Pineda-Akiona,
(Damon Key Leong Kupchak
 Hastert),
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge